UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE UNITED STATES OF AMERICA )
and THE COMMONWEALTH OF )
MASSACHUSETTS )
   Plaintiffs, )

Ex. Rel: ASHLEY SAMPAIO, )
   Relator, )

v. )

DENTAL DREAMS, LLC )
   Defendant. )

DOCKET NO.

**FILED UNDER SEAL**

## PLAINTIFF'S QUI TAM COMPLAINT FILED UNDER SEAL

### PARTIES

1.   Relator, Ashley Sampaio (hereinafter "Relator"), is an individual residing in the
Commonwealth of Massachusetts bringing this action on behalf of the United States of
America and the Commonwealth of Massachusetts.

2.   Plaintiffs are the United States of America and the Commonwealth of Massachusetts.

3.   Defendant, Dental Dreams, LLC (hereinafter "Defendant" or the "Company"), provides dental
services and exists under the laws of the Commonwealth of Massachusetts as a limited liability
company.

### NATURE OF CASE AND VENUE

4.   Relator brings a Qui Tam action under the False Claims Act, 31 U.S.C. §§ 3729-3733, and the
Massachusetts False Claims Act, M.G.L. c. 12, §§ 5B-5O, on behalf of the United States of
America and the Commonwealth of Massachusetts.

5.   Relator is the original source of the information herein.

6.   Relator has direct and independent knowledge of the information herein.

7.    The facts and allegations underlying this Complaint have not been publicly disclosed as defined
      under the False Claims Act, 31 U.S.C. § 3730(e).

8.    This Complaint is filed in camera, under seal, and may not be served upon the Defendant until
      further order of this Court.

9.    Pursuant to 31 U.S.C. § 3730(b)(2), a copy of this Complaint and written disclosure of all
      material written evidence and information the Relator possesses was served on the United
      States of America pursuant to Rule 4(I) of the Federal Rules of Civil Procedure.

10.   Pursuant to 31 U.S.C. § 3730(b)(2), and M.G.L. c. 12, § 5C(3) , a copy of this Complaint and
      written disclosure of all material written evidence and information the Relator possesses was
      served on the Commonwealth of Massachusetts pursuant to Rule 4(d)(3) of the Massachusetts
      Rules of Civil Procedure.

11.   This Court has subject matter and personal jurisdiction under 31 U.S.C. § 3732 which provides
      that any action under 31 U.S.C. § 3730 may be brought in any judicial district in which the
      Defendant can be found, resides, transacts business, or in which any act proscribed by 31 USC
      § 3729 occurred.  All acts alleged herein occurred in the Commonwealth of Massachusetts.

12.   Venue is proper in this District pursuant to 31 U.S.C. §3732(a) because the Defendant transacts
      or has transacted business in the District of Massachusetts. At all times relevant to this
      Complaint, Defendants regularly conducted substantial business within the District of
      Massachusetts.

13.   This Court has jurisdiction over the Massachusetts False Claims Act claim pursuant to 31
      U.S.C. § 3732(b).

## FACTS

14.   Defendant performed dental services for patients throughout the Commonwealth of
      Massachusetts. Defendant has offices located in Fall River, Brockton, New Bedford, Roxbury,
      Lawrence, Leominster, Worcester, Springfield, and Lowell, Massachusetts.

15.   MassHealth, the Massachusetts Medicaid program, is partially funded by the Commonwealth of Massachusetts and the United States of America.

16.   Defendant performs dental services for patients who are covered under MassHealth insurance.

17.   Defendant, through its agents, knowingly made material false statements, and asserted fraudulent claims, to MassHealth for compensation for dental services which were not compensable. MassHealth compensated Defendant relying on Defendant's fraudulent claims. Furthermore, Defendant knew that fraudulent claims were made to MassHealth but knowingly avoided repayment to the United States of America, the Commonwealth of Massachusetts, or any of their political subdivisions.

18.   In 2009, Defendant hired Relator as the office manager of Defendant's New Bedford office. Relator also occasionally managed Defendant's Fall River office.

19.   At all times relevant to this Complaint, Khurram Hussain, Sameera Hussain, and David Wolle were owners of Defendant. The owners were involved in running the Company's day-to-day business operations.

20.   Defendant compensates doctors based on the work they produce. Therefore, the more a doctor bills the insurance carriers of Defendant's patients, such as MassHealth, the greater the doctor is compensated by Defendant.

21.   Pursuant to the Code of Massachusetts Regulations, 130 C.M.R. 420.414, 420.421, and 450.204, dental services must be medically necessary for the service provider to submit a claim to be compensated by MassHealth.

22.   Pursuant to 130 C.M.R. 450.261, "All members and providers must comply with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, specifically including but not limited to 42 U.S.C. 1320a-7b."

23.   Defendant submitted claims to MassHealth to be compensated for work Defendant performed for residents of the Commonwealth of Massachusetts covered by MassHealth.

24.   Defendant's claims for payment from MassHealth were based on Defendant's doctors'

recordings of the services provided to the patients. After a doctor made a claim to MassHealth the claim was reviewed by Defendant's employees, who were called collectors, who submitted the claim to MassHealth. MassHealth then made a payment to Defendant based on the information Defendant provided.

25. Defendant's collectors maintain the medical records and claims filed by Defendant in the operation of its business.

26. In or about 2011, the Fall River office manager, Gizelia DeCouto, told the doctors in the Fall River office to bill MassHealth for a limited examination when the doctors actually only performed a follow-up visit. The doctors at the Fall River office, Dr. Pervez Baig, Dr. Srinivas Desaneedi, and Dr. Jatinderjeet Sidhu, complied with Ms. DeCouto's directive.

27. MassHealth compensates dental providers for performing a limited examination, which pursuant to 114.3 C.M.R. 14.05 is billed to MassHealth under code D9110, but does not compensate dental providers for follow-up visits.

28. Over approximately four months, Dr. Baig, Dr. Desaneedi, and Dr. Sidhu submitted claims to MassHealth for compensation for performing limited examinations when no limited examination was medically necessary and no limited examination was actually performed, in violation of 130 C.M.R. 420.414 and 130 C.M.R. 450.204, 261, and 307. MassHealth compensated Defendant for these fraudulent claims.

29. After submitting fraudulent claims for approximately four months, Dr. Baig, Dr. Desaneedi, and Dr. Sidhu complained to Ms. Hussain about Ms. DeCouto's order. As a result of these complaints, Dr. Baig, Dr. Desaneedi, and Dr. Sidhu were no longer ordered to charge MassHealth for limited examinations when only a follow-up visit was performed.

30. Although the policy of fraudulently charging MassHealth for limited examinations ended, Defendant did not notify MassHealth of the fraudulent charges and Ms. DeCouto was not terminated for her directive. Defendant knowingly avoided its obligation to reimburse MassHealth for its overpayment to Defendant, in violation of 130 C.M.R. 450.235 and 261.

31. Pursuant to 130 C.M.R. 450.235, a provider of dental services that learns MassHealth overpaid for services must report the overpayment in writing to MassHealth, and return the overpayment

- 4 -

to MassHealth within sixty days.

32. In or about 2011, when the Fall River Office was billing MassHealth for limited examinations rather than follow-up examinations, Brenda Waters, Defendant's Regional Manager, investigated the number of limited examinations in the Fall River office. Ms. Waters asked Relator to look up the number of limited examinations performed at Defendant's New Bedford office to assist in this investigation.

33. Defendant terminated Ms. Waters shortly after she investigated the number of limited examinations in the Fall River office.

34. In or about 2012, Defendant's New Bedford Office changed its policy controlling how patients were assigned to doctors. Defendant's new policy required that each patient receiving dental services at the New Bedford office rotate between the doctors at the office.

35. Before Defendant's policy change in or about 2012, Defendant's patients saw the same doctor for each visit. After the policy change, Defendant's doctors received patients who were previously seen by Defendant's other doctors.

36. In 2012, in Defendant's New Bedford Office, Dr. Doshi and Dr. Malaviya began seeing patients previously seen by Dr. Vessela T. Lazarova. Dr. Doshi and Dr. Malaviya noticed that Dr. Lazarova billed MassHealth for dental work that she never performed on patients.

37. Dr. Doshi and Dr. Malaviya knew Dr. Lazarova billed MassHealth for work not performed because when they saw a patient previously seen by Dr. Lazarova, they noticed that Dr. Lazarova billed MassHealth for dental work that was visibly not performed on the patient. For example, in some instances, Dr. Doshi and Dr. Malaviya observed that Dr. Lazarova made a claim to MassHealth, which MassHealth paid, for a filling, yet an examination of the patient revealed that the patient did not have a filling.

38. Pusuant to 114.3 C.M.R. 14.05, Dr. Lazarova billed MassHealth for fillings under Code D2330 and D2331.

39. Dr. Lazarova's fraudulent claims submitted to MassHealth violated 130 C.M.R. 420.414 and 130 C.M.R. 450.204, 261, and 307.

40.     Dr. Doshi and Dr. Malaviya complained to Relator that Dr. Lazarova billed MassHealth for
        work she never performed.

41.     Relator informed her supervisor, Jennifer Kight, the regional manager who succeeded Ms.
        Waters, and Ms. Hussain, the owner of Defendant, about Dr. Lazarova's fraudulent claims to
        MassHealth. Neither Ms. Kight nor Ms. Hussain, or any other agent of Defendant, disciplined
        Dr. Lazarova, who continued to submit fraudulent claims to MassHealth.

42.     Defendant did not notify MassHealth that it overpaid Defendant based on Dr. Lazarova's
        fraudulent claims. Defendant knowingly avoided its obligation to reimburse MassHealth in
        violation of 130 C.M.R. 450.235 and 261.

43.     Defendant periodically conducted an internal audit of all Massachusetts offices. In early 2013,
        Defendant hired Dr. Nicole Holland to audit all Massachusetts offices

44.     As part of her audit, Dr. Holland reviewed the medical records of patients, including their x-
        rays, charts, and the doctor's notes, and compared this information with Defendant's claims
        submitted to, and paid by, MassHealth.  Dr. Holland found that throughout Massachusetts,
        Defendant billed MassHealth for sealants, Code D1351, when no cavity was present on any X-
        ray.

45.     Dr. Holland found that many of the claims paid by MassHealth were for dental services either
        not performed or not medically necessary, in violation of 130 C.M.R. 420.414 and 130 C.M.R.
        450.204, 261, and 307.

46.     Dr. Holland noted that there were high levels of fraudulent claims submitted to MassHealth
        both at Defendant's New Bedford office and throughout Defendant's Massachusetts offices.

47.     At the end of the audit, Dr. Holland reported her findings to Ms. Hussain.

48.     Despite the findings of the audit, Defendant took no corrective actions to prevent future
        fraudulent claims. Furthermore, Defendant did not notify MassHealth that it overpaid
        Defendant. Defendant knowingly avoided its obligation to reimburse MassHealth in violation
        of 130 C.M.R. 450.235 and 261.

- 6 -

49.     In or about early 2013, Helena Silva, a collector working in the New Bedford office, informed
        Relator she was suffering from severe anxiety because Dr. Lazarova submitted false claims to
        MassHealth that she was required to approve. Ms. Silva explained that Dr. Lazarova's claims
        for compensation to MassHealth were not supported by the medical record, including the x-
        rays and charts.

50.     Ms. Helena felt uncomfortable submitting these fraudulent claims to MassHealth because the
        claims violated 130 C.M.R. 420.414 and 130 C.M.R. 450.204, 261, and 307. The claims were
        for dental work not actually performed and not medically necessary.

51.     Relator asked Ms. Silva to collect a sample of the medical records and claims submitted by Dr.
        Lazarova that Ms. Silva thought were suspicious so Relator could review their accuracy.

52.     Ms. Silva provided Relator with the claims and medical records for approximately twenty-five
        patients provided dental services by Dr. Lazarova between January, 2013 and March, 2013. All
        the patients were covered by MassHealth.

53.     Relator reviewed the claims filed by Dr. Lazarova and the supporting medical records, and she
        found that all the claims were fraudulent. The majority of the charts showed that Dr. Lazarova
        filed a claim with MassHealth for a filling where the patient had no cavity, and only an
        abrasion was actually performed. A filling is not medically necessary to be performed if there
        is no cavity. Therefore, those claims billed by Dr. Lazarova violated 130 C.M.R. 420.414 and
        130 C.M.R. 450.204.

54.     In or about March 2013, Relator informed Ms. Kight about Dr. Lazarova's fraudulent claims.
        Ms. Kight informed Relator she would contact her again after speaking with Ms. Hussain.

55.     Ms. Kight did not contact Relator again relating to the fraudulent claims.

56.     On or about April 17, 2013, Relator emailed Ms. Hussain directly, asking her to contact Relator
        to discuss Dr. Lazarova's fraudulent claims submitted to MassHealth. Ms. Hussain did not
        respond.

57.     On or about April 22, 2013, Relator sent Ms. Hussain a text message requesting she call

Relator.

58.  On or about April 24, 2013, Ms. Hussain called Relator and conducted a conference call with Relator and Dr. Lazarova. Ms. Hussain told Dr. Lazarova "I've noticed lots of abrasions being billed as fillings, you need to stop it." Dr. Lazarova responded "O.K."

59.  Defendant did not terminate or formally reprimand Dr. Lazarova.

60.  About a week later, Ms. Silva contacted MassHealth and asked if an abrasion billed as a filling is covered by their insurance. MassHealth informed Ms. Silva that billing an abrasion as a filling is insurance fraud.

61.  Shortly thereafter, Relator informed Ms. Kight that Ms. Silva spoke with MassHealth and asked if Defendant was going to report the fraudulent claims MassHealth paid to Defendant. Ms. Kight informed Relator that Defendant would not report the fraudulent claims because it would raise a red flag and it would cause an audit of Defendant's dental practice. Ms. Kight, apparently worried, questioned Relator whether Ms. Silva provided MassHealth with Defendant's name, office location, or tax information. Relator told Ms. Kight that Ms. Silva had not provided such information to MassHealth.

62.  On May 13, 2013, Relator informed Defendant she resigned.

63.  On June 21, 2013, owner David Wolle requested Relator sign what he referred to as a "gag-order" in exchange for $1,153.89.

64.  Relator did not sign Defendant's gag-order.

65.  Throughout Relator's employment, Defendant's doctors in the Fall River and New Bedford office fraudulently charged MassHealth for dental work which was not medically necessary.

66.  Throughout Relator's employment with Defendant, Dr. Malaviya fraudulently billed MassHealth for surgical extractions when she only performed simple extractions. Dr. Malaviya's fraudulent claims resulted in MassHealth overpaying Defendant for dental services.

67.  Defendant billed MassHealth for fillings when the patient had no cavities. Although Defendant

charged MassHealth for this service, the service was not medically necessary as required by 130 C.M.R. 450.204.

68. Defendant billed MassHealth for sealants when no sealant was performed. Defendant's actions were in violation of 130 C.M.R. 420.414 and 130 C.M.R. 450.261 and 307.

69. Defendant billed MassHealth for limited examinations when there were no limited examinations performed. Although Defendant billed MassHealth for this service, the service was not medically necessary as required by 130 CMR 450.204.

70. As a result of the Defendant's false statements and claims, the United States government and the Commonwealth of Massachusetts were induced to compensate Defendant for services that Defendant alleged were performed, but which never were performed.

71. As a result of the Defendant's false statements and claims, the United States government and the Commonwealth of Massachusetts were induced to compensate Defendant for services that Defendant alleged were performed, but which were not compensable.

72. The United States government and the Commonwealth of Massachusetts were damaged as a result of Defendant's submission of false claims and false statements to MassHealth and Defendant's failure to reimburse MassHealth when Defendant knew it was compensated for making fraudulent claims.

COUNT I

VIOLATION OF 31 U.S.C. §§ 3729-3733 - FALSE CLAIMS ACT

73. Relator realleges the allegations contained in the above paragraphs and incorporates the same by reference herein.

74. Defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval.

75. Defendant knowingly made, or caused to be made, a false statement material to a fraudulent claim.

76.     Defendant knowingly avoided an obligation to transmit money or property to the government.

77.     The United States government and the Commonwealth of Massachusetts, unaware of the falsity of Defendant's claims and statements, and in reliance of the accuracy thereof, paid money to Defendant through MassHealth for fraudulent claims.

78.     The United States, the Commonwealth of Massachusetts, and the general public have been damaged as a result of Defendant's violations of the False Claims Act.

        WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount to be determined by this litigation, together with interest, costs, attorney's fees, treble damages, and any other relief that this Court deems just and fit.

## COUNT II
### VIOLATION OF M.G.L. c. 12, §§ 5B-5O - MASSACHUSETTS FALSE CLAIMS ACT

79.     Relator realleges the allegations contained in the above paragraphs and incorporates the same by reference herein.

80.     Defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval.

81.     Defendant knowingly made, or caused to be made, a false statement material to a fraudulent claim.

82.     Defendant is a beneficiary of an overpayment from the Commonwealth of Massachusetts, or a political subdivision thereof, and subsequently discovered the falsity of the claim or the receipt of overpayment and failed to disclose the false claim or receipt of overpayment to the Commonwealth of Massachusetts, or a political subdivision thereof.

83.     The United States government and the Commonwealth of Massachusetts, unaware of the falsity of Defendant's claims and statements, and in reliance of the accuracy thereof, paid money to Defendant through MassHealth for fraudulent claims.

84.     The United States, the Commonwealth of Massachusetts, and the general public have been
        damaged as a result of Defendant's violations of the False Claims Act.

        WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount to be
determined by this litigation, together with interest, costs, attorney's fees, treble damages, and any
other relief that this Court deems just and fit.

                            REQUEST FOR A JURY TRIAL

85.     Plaintiff respectfully requests a trial by jury on all counts to the full extent permitted by law.

                                    Respectfully submitted,
                                    Relator,
                                    Ashley Sampaio
                                    By her attorneys,


                                    Maria Mancini Scott, BBO #630722
                                    Thomas P. Delmar, BBO #689175
                                    Claudine Cloutier, BBO # 631435
                                    KECHES LAW GROUP, P.C.
                                    122 Dean Street
                                    Taunton, MA 02780
                                    Tel: (508) 822-2000
                                    mscott@kecheslaw.com
                                    ccloutier@kecheslaw.com

Dated: May 28, 2014